**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Meyer, | No. CV-12-01445-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Edward Meyer appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on his appeal. (Doc. 22).

**I.     BACKGROUND**

**A.     Procedural Background**

On October 30, 2008, Plaintiff, Edward Meyer, filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of May 1, 2008. (Tr. at 142). The Commissioner denied benefits on March 26, 2009, (Tr. at 76), and Plaintiff requested reconsideration, (Tr. at 80). Plaintiff was again denied on June 12, 2009, (Tr. at 22, 81), and he appealed.

On February 10, 2011, Administrative Law Judge ("ALJ") Edward D. Steinman

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is substituted for Michael J. Astrue as Defendant. Fed.R.Civ.P. 25(d). For convenience, the Court will refer to the Acting Commissioner as the Commissioner.

held a hearing on Plaintiff's claim. (Tr. at 34-73). At the hearing, Plaintiff amended his disability onset date to November 9, 2008. (Tr. at 36). Following the ALJ's unfavorable decision, (Tr. at 19-29), Plaintiff appealed to the Appeals Council. After the Appeals Council denied Plaintiff's request for review, (Tr. at 1), Plaintiff filed an appeal with this Court. (Doc. 1, 22). Plaintiff argues that the ALJ wrongly (1) favored the opinions of non-treating and non-examining physicians over his treating physician, (2) found Plaintiff's subjective symptoms to be not credible, (3) assessed Plaintiff's residual functional capacity, (4) cherrypicked the medical evidence to reach a conclusion of non-disability, and (5) improperly rejected the opinions of Plaintiff's chiropractor as non-medical sources. (Doc. 22 at 7-20).

### B. Medical Background

The Court will briefly summarize Plaintiff's medical history, which is thoroughly recounted in the administrative record. Plaintiff's medical records, beginning in October 2005, reflect extensive treatment for low back pain. In 2005, an MRI of Plaintiff's back showed evidence of multilevel hypertrophic disc desiccation and Schmorl's nodes as well as multilevel posterior disc bulging with bilateral neural foraminal narrowing. (Tr. at 219-20). Plaintiff underwent regular treatments with his physician, Dr. Royal Anspach, who diagnosed Plaintiff in 2007 as having mild to moderate degenerative disc disease L5-S1 without protrusion or associated neural encroachment. (Tr. at 225). Plaintiff also treated with Dr. Scott Hoffer, a chiropractor, who reported in January 2008 that Plaintiff "has had an exacerbation of his chronic low back pain which has limited his ability to do normal daily activities . . ." and that MRIs showed "multi level disc bulging with flattening of the anterior aspect of the spinal cord from L2 through L5 causing foraminal encroachment." (Tr. at 393). In June 2008, another of Plaintiff's doctors, Dr. Warren Rizzo, diagnosed Plaintiff as having osteoarthritis of the hips and lumbosacral spine degenerative arthritis. (Tr. at 267).

Despite undergoing treatments including oral medications, epidurals, medial branch blocks, and lumbar facet injections, Plaintiff continually reported severe back pain

from 2005 to 2008. (Tr. at 267, 277-78). Records from after Plaintiff's alleged onset date of disability show that Plaintiff continues to suffer back pain. *See, e.g.*, (Tr. at 514). X-rays from 2009 show Plaintiff suffered multilevel lumbar and lower thoracic degenerative disc changes, early lower cervical degenerative disc changes, and minimal asymmetric left hip degenerative joint disease. (Tr. at 296-300). Plaintiff has continued treating with Dr. Anspach through at least 2011. (Tr. at 522). Dr. Anspach has diagnosed Plaintiff with chronic lumbar pain, degenerative disc disease, and chronic hip pain with degenerative arthritis of the hip. (Tr. at 489).

## II. DISABILITY

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the

1 claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

2       5.     At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving that the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C.    The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's amended alleged onset date of November 9, 2008 and last insured date of December 31, 2013. (Tr. at 24). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of November 9, 2008. (*Id.*) The ALJ then found Plaintiff to have the following severe impairments: "arthritis of the hips; lumbar spine degenerative disc disease with spondylosis." (*Id.*) Under step three, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (Tr. at 25). The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was the ability to "lift or carry 10 pounds frequently and 20 pounds occasionally; sit, stand or walk for 6 hours total out of an 8-hour workday with the need to alternately sit or stand or relieve discomfort; avoid climbing ropes, scaffolds or ladders; avoid concentrated exposure to hazards; mentally limited to simple and repetitive tasks with no public contact and limited co-worker and supervisor contact due to side

- 5 -

effects from the prescribed medications." (*Id.*) Under step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (Tr. at 28). Under step five, the ALJ then considered the Plaintiff's age, education, work experience, and residual functional capacity to determine that Plaintiff could perform a number of jobs in the national economy. (*Id.*) The ALJ concluded that Plaintiff was not disabled.

### D. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III. THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS

### A. Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is entitled to controlling weight when it is "well-

1  supported by medically accepted clinical and laboratory diagnostic techniques and is not
2  inconsistent with the other substantial evidence in [the claimant's] case record." 20
3  C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating
4  physician's opinion "is not well-supported" or "is inconsistent with other substantial
5  evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at
6  631.

### 1. Substantial Evidence

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2. Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains

- 7 -

entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(c). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(c).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

### 3. Opinions on Disability

Finally, "[a]lthough a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). This is because the determination as to whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Thus, even if a treating physician's opinion is controlling, it does not necessarily lead to a finding of disability. See *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (rejecting a treating physician's opinion of disability).

### B. Discussion

Plaintiff argues the ALJ committed legal error in rejecting the medical opinions of Dr. Anspach and Dr. Hoffer, Plaintiff's treating physicians, in favor of the opinions of non-treating consultative physicians. (Doc. 22 at 7).

**1.     Dr. Anspach**

Dr. Anspach has treated Plaintiff for his back pain since March 2007. (Tr. at 489). At Plaintiff's initial visit, Dr. Anspach noted Plaintiff's history of back pain on his left side for which he had been undergoing physical therapy with pain management, including a nerve block and epidural. (Tr. at 315). Dr. Anspach diagnosed chronic pain in the lower spine and left hip. (Tr. at 316), In July 2009, Dr. Anspach opined that Plaintiff suffered chronic low back pain, chronic hip pain, and sciatica and was, in his opinion, disabled. (Tr. at 313).

In November 2009, Dr. Anspach opined in a residual functional capacity questionnaire that Plaintiff's impairments existed since he began treating Plaintiff in 2007. (Tr. at 430). He diagnosed Plaintiff as having chronic lumbar pain, degenerative disc disease, and chronic hip pain, based upon two MRIs showing disc degeneration and a negative x-ray of the hip. (*Id.*) He also noted that Plaintiff had tested negative for autoimmune diseases. (*Id.*) He described Plaintiff's symptoms as chronic lumbar pain with spasm and chronic hip pain with spasm causing fatigue. (*Id.*) He listed objective signs of pain as reduced range of motion of the lower spine, reflex changes, and tenderness, and stated that Plaintiff's pain would constantly interfere with the attention and concentration needed to perform work tasks. (Tr. at 431).

Dr. Anspach further opined that Plaintiff could sit for 30 minutes at a time and for less than two hours in an eight-hour workday; could stand for 30 minutes at a time and for less than two hours in an eight-hour workday; would need every thirty minutes to walk for ten minutes; could lift or carry less than ten pounds only rarely; could never stoop, crouch, or climb ladders and could climb stairs only rarely; had significant limitations reaching; and could use his hands to grasp and turn for only 75% of a workday. He also opined that Plaintiff would miss more than four days per month of work due to his impairments. (Tr. at 432-33). Dr. Anspach completed a second residual functional capacity questionnaire in September 2010 in which he expressed the same opinion as to Plaintiff's diagnoses, symptoms, and limitations. (Tr. at 489-93).

The ALJ explicitly discounted Dr. Anspach's opinion for four reasons: (1) the opinion that Plaintiff was "disabled" was not entitled to any special significance; (2) the opinion was unsupported by the clinical findings and test results upon which it relied; (3) the opinion was unsupported by the opinions of Dr. Maxwell and Dr. Cunningham; and (4) the opinion was inconsistent with Plaintiff's reported activities of daily living. (Tr. at 27).

Plaintiff argues that the ALJ erred in concluding "that the treating doctor's opinion did not merit any special consideration." (Doc. 22 at 8). Plaintiff misreads the ALJ's decision. The ALJ stated only that "[b]y regulation, opinions that the claimant is 'disabled' or 'unable to work' are not entitled to any special significance, even when offered by a treating physician." (Tr. at 27). In this regard, the ALJ correctly disregarded Dr. Anspach's opinion as to disability because the ultimate issue of disability is an administrative decision reserved to the Commissioner. *See Tonapetyan*, 242 F.3d at 1148. Nothing in the ALJ's decision suggests, as Plaintiff contends, that the ALJ automatically discounted Dr. Anspach's *medical* opinion. Accordingly, the Court rejects this argument.

Instead, the ALJ properly found that Dr. Anspach's medical opinion was inconsistent with substantial record evidence, namely the opinion of Dr. Keith Cunningham, a board-certified internist, who examined Plaintiff in February 2009. (Tr. at 27, 290). Dr. Cunningham diagnosed Plaintiff with chronic hip and back pain, androgen deficiency, and deconditioning. (Tr. at 291). Dr. Cunningham opined that these conditions would not impose functional limitations on Plaintiff. (Tr. at 292). Dr. Cunningham examined Plaintiff in his office where he noted Plaintiff's medical history, current medications, and self-reported symptoms. (Tr. at 290). Dr. Cunningham tested Plaintiff's gait, coordination, range of motion, joints, motor skills, reflexes, and sensory response. (Tr. at 290). Dr. Cunningham provided independent clinical findings that differed from the findings of Dr. Anspach. *See Orn*, 495 F.3d at 632.

In addition to Dr. Cunningham, the ALJ also noted the opinion of Dr. Maxwell, who examined Plaintiff in September 2009. (Tr. at 27). Dr. Maxwell noted Plaintiff

suffered pain in his hips, back, and diagnosed arthritis of the hips and lumbar spondylosis. (Tr. at 428). Significantly, aside from narrowing of Plaintiff's L5-S1 vertebra, Dr. Cunningham made no other objective findings. Because the opinions of Drs. Cunningham and Maxwell constituted substantial record evidence contradicting Dr. Anspach's opinion, the ALJ did not err in concluding that Dr. Anspach's opinion was not entitled to controlling weight.

The ALJ, however, not only concluded that Dr. Anspach's opinion was not entitled to controlling weight but also that it was entitled to only minimal weight. The next issue is whether this was error. As a treating physician, Dr. Anspach's opinion is entitled to deference even if not given controlling weight. *Orn*, 495 F.3d at 631. However, although the ALJ did not explicitly discuss each of the factors enumerated in 20 C.F.R. § 404.1527(c) for determining the weight to accord a medical opinion, it is clear from the whole of the ALJ's opinion that the ALJ adequately weighed these factors.

The ALJ correctly found that Dr. Anspach's opinion was not well-supported by the medical evidence. (Tr. at 27). Although Dr. Anspach opined that Plaintiff was disabled, his own progress notes show that for most office visits Plaintiff consistently had a normal gait, station, motor functioning, sensation, coordination, and reflexes, (Tr. at 232-37, 318, 322, 324, 333, 335, 337, 339, 341, 445, 447, 459, 462, 467, 477, 479, 517, 519, 521), although Plaintiff sometimes had a muscle spasm and/or limping. *See* (Tr. at 239, 316, 329, 441, 443, 453, 455, 469, 473, 475, 523).

Plaintiff argues that the ALJ erred in rejecting Dr. Anspach's opinion as inconsistent with Dr. Anspach's own functional assessment and as inconsistent with the ALJ's functional assessment. (Doc. 22 at 8). First, the ALJ did not reject Dr. Anspach's opinion because it was inconsistent with the ALJ's assessment of Plaintiff's RFC. Rather, the ALJ's decision specifically discounts Dr. Anspach's opinion because it was inconsistent with the clinical findings and test results, the opinion of Dr. Cunningham, the examination by Dr. Maxwell, and Plaintiff's own self-reported activities. (Tr. at 27).

Second, the ALJ was correct that Dr. Anspach's RFC assessment of Plaintiff was

inconsistent with his treatment records, and therefore had a specific and legitimate reason for giving Dr. Anspach's opinion less weight. An incongruity between a treating physician's RFC assessment and that physician's medical records "provides [a] specific and legitimate reason for rejecting" that physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The clinical findings that Dr. Anspach cited in his RFC contradicted his conclusion that Plaintiff had severe functional limitations. Although Dr. Ansbach stated that the first MRI, taken in 2005, showed that Plaintiff had disc bulging, that MRI also showed "no obvious impression" upon the nerve roots of the spine. (Tr. at 430, 219-20). Similarly, the second MRI, taken in 2007, showed no evidence of disc protrusion and "[m]ild to moderate degenerative disc disease L5-S1 without protrusion or associated neural encroachment." (Tr. at 225). It is unclear, however, upon which hip x-ray Dr. Ansbach's opinion was based as Plaintiff had x-rays taken in both 2007 and 2009. (Tr. at 223, 298). The 2007 x-ray was entirely unremarkable and showed no acute disease. (Tr. at 223). The 2009 x-ray showed "[m]inimal asymmetric left hip [degenerative joint disease] compared to the right." (Tr. at 298). Regardless, neither x-ray showed objective findings of the type that would cause Plaintiff's alleged functional limitations.[2] Moreover, Dr. Anspach's treatment records reflect that Plaintiff generally had normal range of motion, reflexes, and gait. *See* (Tr. at 232-37, 318, 322, 324, 333, 335, 337, 339, 341, 445, 447, 459, 462, 467, 477, 479, 517, 519, 521). Because Dr. Anspach's medical records do not support his RFC assessment, the ALJ had a specific and legitimate reason for giving his opinion less weight.

Plaintiff argues that the ALJ erred in relying upon medical records predating the alleged onset date of disability to discount Dr. Anspach's opinion. (Doc. 22 at 8). Although "[m]edical opinions that predate the alleged onset of disability are of limited relevance," *Carmickle*, 533 F.3d at 1165, the same cannot be said for medical *records*.

---

[2] Plaintiff argues the ALJ misinterpreted these records as "normal." (Doc. 22 at 9). But the ALJ never stated that Plaintiff's x-ray results were normal; instead, he concluded that they did not support the severe limitations that Dr. Anspach alleged in his RFC assessment. (Tr. at 27).

- 12 -

1    Moreover, Dr. Anspach's opinions themselves expressly relied upon records predating
2    Plaintiff's alleged onset of disability date. (Tr. at 430, 489). Fundamental fairness dictates
3    that the ALJ can consider medical records underlying a medical opinion that Plaintiff
4    offered in support of his disability claim. Additionally, other substantial evidence from
5    after Plaintiff's alleged onset date supported the ALJ's weighing of Dr. Anspach's
6    opinion, including Dr. Anspach's 2010 and 2009 RFC assessments, Dr. Anspach's
7    treatment notes dating from 2008 through 2010, the 2009 x-ray, and Dr. Cunningham's
8    evaluation. The ALJ properly considered Plaintiff's medical records predating his alleged
9    onset of disability date in determining that Dr. Anspach's opinion was entitled to minimal
10   weight.

11   Plaintiff also argues that the ALJ cherrypicked Dr. Anspach's records to support
12   its conclusion and ignored the evidence favorable to Plaintiff. (Doc. 22 at 9). Specifically,
13   Plaintiff takes issue with the ALJ's reference to Dr. Anspach's records showing Plaintiff
14   has having a "normal gait." (Tr. at 25). Plaintiff asserts that the remaining portions of that
15   medical record show Plaintiff has intense pain, tenderness, weakness, and restriction in
16   range of motion. (Doc. 22 at 9). Although some of Dr. Anspach's records show Plaintiff
17   reporting pain in his hip and spine, *see, e.g.*, (Tr. at 462), the most recent records reveal
18   that Plaintiff "walks for exercise" and "ambulates on own" despite reporting some hip
19   tenderness. (Tr. at 516-17). The ALJ's decision need only be supported by substantial
20   evidence, which the Ninth Circuit Court of Appeals has said is less than a preponderance
21   and only more than "a mere scintilla." *Thomas*, 278 F.3d at 954. Accordingly, substantial
22   evidence supports the ALJ's finding that Dr. Anspach's opinion was entitled to minimal
23   weight because it was inconsistent with the other record evidence.

24   **2.    Dr. Hoffer**

25   Dr. Hoffer is a chiropractor who has been treating Plaintiff since May 2007. (Tr. at
26   241). Dr. Hoffer's treatment notes reflect a consistent history of Plaintiff having back and
27   hip pain. *See, e.g.*, (Tr. at 243-61). In November 2009, Dr. Hoffer completed a RFC
28   assessment of Plaintiff in which he described Plaintifff as suffering from hip and low

1  back pain, dizziness from medication, and occasional spasms with sitting. (Tr. at 435). He
2  noted tenderness, swelling, muscle spasm, muscle weakness, and impaired sleep, and
3  concluded Plaintiff could sit for only 30 minutes at a time, stand for 30 minutes at a time,
4  stand and sit for less than two hours total in an eight-hour day, could rarely lift less than
5  10 pounds and never any heavier weight, could rarely twist and climb stairs but never
6  stoop, squat, or climb ladders, and had significant limitations "with reaching, handling or
7  fingering." (Tr. at 436-37). He also stated that Plaintiff was likely to have good and bad
8  days and would be likely to miss more than four days of work per month as a result of his
9  condition. (Tr. at 438). He stated that these limitations began in November 2008.

10  Dr. Hoffer completed another RFC assessment in October 2010 in which he
11  diagnosed chronic lumbalgia, degenerative joint disease, and chronic hip pain with
12  degeneration. (Tr. at 494). He listed as objective findings MRIs, positive orthopedic tests,
13  pulpatory findings, spasms, and moderate to severe tenderness. (*Id.*). He did not state that
14  Plaintiff was likely to have good days or bad days, and stated that the description of
15  limitations and symptoms applied back to November 2008. (Tr. at 497).

16  The ALJ considered Dr. Hoffer's opinion but ultimately assigned it little weight.
17  (Tr. at 26). Plaintiff argues this was error because Dr. Hoffer's findings were consistent
18  with those of Dr. Anspach. (Doc. 22 at 20). But chiropractors are not acceptable medical
19  sources to establish the claimant's impairment. 20 C.F.R. § 404.1513(d)(1). As an "other
20  source," the ALJ could discount Dr. Hoffer's testimony if he gave reasons germane to
21  doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). In evaluating Dr.
22  Hoffer's opinions, the ALJ could consider a number of factors, including "[h]ow long the
23  source has known and how frequently the source has seen the individual; [h]ow
24  consistent the opinion is with other evidence; [t]he degree to which the source presents
25  relevant evidence to support an opinion; [h]ow well the source explains the opinion;
26  [w]hether the source has a specialty or area of expertise related to the individual's
27  impairment(s); and [a]ny other factors that end to support or refute the opinion." SSR 06-
28  03p.

Here, the ALJ had a germane reason for discounting Dr. Hoffer's opinion: its inconsistency with the opinions of Drs. Cunningham and Maxwell as well as the objective medical evidence in the record. Consequently, the ALJ did not err in assigning little weight to Dr. Hoffer's opinion.

## IV. PLAINTIFF'S REPORTED SYMPTOMS

### A. Legal Standard

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–36. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341))
>
> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-02420-PHX-JAT, 2014 WL 523007, at *8–9 (D. Ariz. Feb. 10, 2014).

### B.     Discussion

Plaintiff contends that the ALJ failed to point to specific findings showing clear and convincing reasons to discredit Plaintiff's subjective complaints. (Doc. 22 at 9-10). Specifically, Plaintiff alleges that the ALJ cited a functionality assessment completed by Plaintiff to support the ALJ's conclusion while ignoring those portions of the same assessment in which Plaintiff described his significant limitations. (*Id.* at 10).

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to produce the Plaintiff's alleged symptoms, Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." (Tr. at 25). Plaintiff noted in his description of his daily activities that he does his own grocery shopping and laundry once per week, cleans the living area of his house, can drive for approximately 10 miles or 20-30 minutes, and visits his friends once or twice a week. (Tr. at 180). The ALJ noted that Plaintiff cooks his own meals and does yardwork. (*Id.*)

Plaintiff is correct that the ALJ erred in stating that Plaintiff did his own yard work. The record shows that Plaintiff reported hiring a gardener to do his yard work and never stated that he did yard work. (Tr. at 193). But error that "does not negate the validity of the ALJ's ultimate [credibility] conclusion" is harmless error "and does not warrant reversal." *Carmickle*, 533 F.3d at 1162. Here, the error is harmless because even if Plaintiff did not perform his own yardwork, the balance of his activities were sufficiently demanding (although not strenuous) that they supported the ALJ's credibility conclusion. Performing grocery shopping and laundry each week, driving for a half hour, and cleaning the living area were inconsistent with the total disability that Plaintiff alleged in his functionality assessment.

Plaintiff next argues that the ALJ erred in assessing the Plaintiff's daily activities to conclude that he has the capability to perform full-time work. (Doc. 22 at 11). An ALJ may consider daily living activities in his credibility analysis. *See* 20 C.F.R. §

404.1529(c)(3)(i). *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" serves as evidence of ability to work).

Plaintiff's sole argument on this point is that the ALJ erred because Plaintiff's "activities of daily limiting were significantly more limited in scope and duration" than the ALJ acknowledged. (Doc. 22 at 10, 13). Although Plaintiff is correct that the ALJ did not recount every detail of Plaintiff's self-reported daily activities, Plaintiff fails to show that the ALJ's conclusion was inconsistent with these activities. For example, Plaintiff reported that he can do his own grocery shopping but for no more than a half hour. (Tr. at 193). Yet Plaintiff testified at the hearing before the ALJ that he spent 75 percent of the day lying in bed to relieve his pain. The ALJ correctly found that Plaintiff's reported daily activities, including cleaning, driving, and going shopping, were inconsistent with Plaintiff's claim that he spent most of the day lying in bed.

There were specific findings supported by the record that provided clear and convincing reasons to explain the ALJ's credibility determination. The ALJ did not err in finding Plaintiff not to be credible in the severity of his symptoms based upon Plaintiff's own objective description of his daily activities. The ALJ's failure to note every detail of Plaintiff's limitations, such as the precise length of time Plaintiff stated he could perform each activity, does not imply the ALJ's failure to consider those details. The ALJ is not required to recount every detail of every piece of evidence in the record.

## V. PLAINTIFF'S RFC

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. (Doc. 22 at 13). The ALJ determined that Plaintiff was able to perform a range of light work with the need to stand or sit at will due to hip and back impairments, mentally limited to "simple and repetitive tasks with no public contact and limited co-worker and supervisor contact." (Tr. at 25-27). The ALJ also took into account "the documented adverse side effects from the prescribed narcotic medications" that Plaintiff takes for his pain. (Tr. at 27).[3]

---

[3] Plaintiff testified at his ALJ hearing that among other medications, he

Substantial evidence supported the ALJ's assessment of Plaintiff's RFC. The objective imaging studies, including Plaintiff's multiple x-rays and MRIs, did not support a finding of disability for the reasons the Court has discussed in its analysis of the ALJ's discounting of Dr. Anspach's opinion. Dr. Cunningham examined Plaintiff and opined that Plaintiff's conditions did not impose functional limitations. (Tr. at 292). Furthermore, Dr. Griffith, a state agency physician, evaluated Plaintiff and determined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for six hours in an eight hour workday, and push and pull for an unlimited time. (Tr. at 302). Dr. Griffith noted Plaintiff's "[p]oor conditioning," however. (*Id.*) Similarly, Dr. Fina evaluated Plaintiff and determined that a RFC permitting only light work was appropriate. (Tr. at 350). This is substantial evidence supporting the ALJ's decision.[4]

Plaintiff nevertheless argues that the ALJ erred because at Plaintiff's hearing, the vocational expert testified that if Plaintiff suffered from Plaintiff's alleged limitations, he would be precluded from all work, yet the ALJ relied upon the expert's testimony that Plaintiff could perform light work. (Doc. 22 at 15). Plaintiff's argument is fundamentally flawed because although the expert agreed that Plaintiff could not work under the limitations proposed in Plaintiff's hypothetical question, there is no substantial evidence in the record supporting those limitations. For the reasons already discussed, Plaintiff's allegations that he is unable to perform any work are not credible. The ALJ is not required to rely upon the vocational expert's testimony under a hypothetical scenario when substantial record evidence does not support that scenario. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.").

---

continually takes "codeine plus Tylenol" every six hours, day and night. (Tr. at 44-45).

[4] Plaintiff also argues that substantial evidence did not support the ALJ's opinion because the ALJ ignored x-rays dating after Plaintiff's alleged onset date and remarked that Plaintiff has had a "conservative approach" to treatment. (Doc. 22 at 17). But even if this were true, *substantial* evidence supported the ALJ's decision. The ALJ's decision need not be the only determination that a record supports. *See also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment").

## VI. NEW EVIDENCE

Plaintiff asks the Court to consider new post-hearing evidence consisting of additional treatment records from Dr. Anspach. (Doc. 22 at 21). The Court may order "additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Such new evidence "must bear directly and substantially on the matter in dispute," and the claimant "must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citation and internal quotation marks omitted). Because all of the additional treatment records document treatment occurring after the date of the ALJ's decision, Plaintiff cannot demonstrate there is a reasonable possibility that the evidence would have changed the ALJ's decision. Furthermore, Plaintiff cannot demonstrate that that the evidence is material because records that did not exist at the time of the ALJ's decision cannot bear "directly and substantially" on the dispute before the ALJ. The Court will not consider Plaintiff's new evidence.

## VII. CONCLUSION

The ALJ's decision in this case is supported by substantial record evidence, and the ALJ's single error in misstating that Plaintiff did his own gardening is harmless.

For the foregoing reasons,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1          **IT IS ORDERED** that the decision of the Administrative Law Judge is affirmed.

2          **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
3 accordingly.  The judgment will serve as the mandate of this Court.

4          Dated this 25th day of March, 2014.

_____
James A. Teilborg
Senior United States District Judge